UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

STEPHANIE T. LACHOWSKI,

                                    Plaintiff,

                                                                    DECISION AND ORDER

                                                                    18-CV-0179L

                    v.

ANDREW SAUL,
Commissioner of Social Security,

                                    Defendant.

_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On February 5, 2014 and February 6, 2014, plaintiff, then thirty years old, filed applications for a period of disability and disability insurance benefits, and for Supplemental Security Income benefits. In both applications, plaintiff alleged an inability to work since January 1, 2010 – later amended to November 22, 2012. (Administrative Transcript, Dkt. #8 at 11). Her applications were initially denied.

Plaintiff requested a hearing, which was held on May 19, 2016 before Administrative Law Judge ("ALJ") Stephen Cordovani. The ALJ issued a decision on July 5, 2016, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #8 at 11-21). That decision became the final decision of the Commissioner when the Appeals Council denied review on December 6, 2017. (Dkt. #8 at 1-4). Plaintiff now appeals.

The plaintiff has moved for remand of the matter for calculation and payment of benefits or in the alternative for further proceedings (Dkt. #11), and the Commissioner has cross moved (Dkt. #14) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §404.1509, §404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

When assessing nonexertional limitations, in addition to the usual five-step analysis, the regulations "require application of a 'special technique' at the second and third steps of the five-step framework." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant is found to have a medically determinable mental impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 CFR §404.1520a(c)(3).

The ALJ summarized plaintiff's medical records, which included treatment notes for post traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), major depressive disorder, and bipolar disorder, which he concluded together constituted a severe impairment not meeting or equaling a listed impairment. The ALJ then applied the special

technique, and found that the plaintiff was mildly restricted in activities of daily living, moderately restricted in social functioning, moderately restricted with regard to concentration, persistence and pace, and had experienced one or two episodes of decompensation.

In light of these findings and the evidence of record, ALJ determined that plaintiff has the RFC to perform work at all exertional levels, with the following nonexertional limitations: plaintiff can understand, remember and carry out simple and routine instructions and tasks. Plaintiff cannot engage in supervisory duties, make decisions independently, meet strict production quotas, or handle more than minimal changes in work routines and processes. She can interact frequently with supervisors, but can have no more than incidental interaction with coworkers and/or the general public. (Dkt. #8 at 16). When presented with this RFC as a hypothetical at the hearing, vocational expert Cherie A. Plante testified that such an individual could perform the positions of classifier (light unskilled), industrial cleaner (medium unskilled) and addresser (sedentary unskilled). (Dkt. #8 at 20).

The plaintiff initially argues that the ALJ's RFC finding was not supported by substantial evidence, because the ALJ gave each of the medical opinions of record "little" weight.

The Court disagrees. The medical opinions of record included a February 7, 2014 opinion by Dr. Lorne Campbell, who was identified by plaintiff in her moving papers as a physician with whom she treated for PTSD and chemical dependency issues, although the ALJ did not have the benefit of knowing his identity or status, as his signature on the opinion was illegible. (Dkt. #8 at 18, discussing opinion of "an unidentified treatment provider"). Dr. Campbell found "no evidence of limitations" in any of the 16 physical and mental functioning categories he assessed, but nonetheless opined that plaintiff, diagnosed with opioid disorder, bipolar disorder, ADHD and

3

PTSD, was "unable to perform any work at present due to multiple mental health issues." (Dkt. #8 at 380-83). The record also included a 2015 assessment by plaintiff's treating social worker, Emily Curry, which opined that, "per client report," plaintiff was "very limited" in her abilities with respect to memory, attention and concentration, decision-making, social interaction and work-related functioning. (Dkt. #8 at 496-97). Ms. Curry also submitted a letter dated February 15, 2016, which stated that plaintiff's diagnoses of PTSD, ADHD and bipolar disorder "have been a barrier to her effectively functioning in the community." (Dkt. #8 at 537).

The ALJ gave each of these opinions "little" weight, noting that they were inconsistent with substantial evidence of record, including plaintiff's participation in college, her academic performance (with grades that ranged from A to F, but averaged at a C or better level each semester), successful student teaching experience, and ability to live independently, manage her household and care for her two dogs. (Dkt. #8 at 18).

While Dr. Campbell was apparently one of plaintiff's treating physicians, the ALJ's rejection of his opinion as to the ultimate issue of disability was manifestly proper, as that determination is reserved for the Commissioner. *See e.g.*, *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate issue of disability is set aside for the Commissioner, and conclusory opinions on that issue, even when rendered by a treating physician, are appropriately ignored by an ALJ). *See also* 20 C.F.R. §404.1527(e)(1). Moreover, Dr. Campbell's conclusion that plaintiff was utterly disabled by mental health symptoms was contradicted by the remainder of his assessment, which found "no evidence" of physical or mental limitations in any functional category, including attention and concentration, maintaining a consistent work pace, understanding, remembering and following simple instructions, carrying out simple tasks, and

4

interacting with others. (Dkt. #8 at 380-83). Thus, to the extent plaintiff argues that Dr. Campbell's opinion was entitled to greater weight due to his status as a treating physician, the Court notes that Dr. Campbell's opinion as to plaintiff's exertional and nonexertional limitations (that is, that she had none), if credited, would have resulted in an RFC with far fewer limitations than the ALJ ultimately found.

With respect to the opinions by Ms. Curry, the ALJ discussed them both, took note of Ms. Curry's status as a non-acceptable medical source, and identified inconsistencies between her opinions and other evidence of record, including plaintiff's treatment notes and self-reported daily activities, and thus furnished good reasons for declining to credit them. Indeed, neither of Ms. Curry's opinions was appreciably probative on its face: neither was supported by any narrative explanation or description of plaintiff's symptoms. Moreover, the initial opinion was simply a recitation of plaintiff's own self-reported symptoms rather than Ms. Curry's own professional assessment, and the second is a vague generalization concerning plaintiff's ability to "function[]" in the community" rather than a discussion of her ability to perform the specific exertional or nonexertional requirements of work. In fact, plaintiff's treatment records generally indicate that her therapy and medication regimen led to overall improvement in her symptoms. (Dkt. #8 at 373-76, 440, 532, 534, 540). To the extent that plaintiff's therapy records do indicate periodic complaints of moderate depression, anxiety, and difficulty with maintaining focus, attention and concentration, the RFC determined by the ALJ accounts for those issues by limiting plaintiff to simple, routine tasks with no independent decision-making, no strict production quotas, and no more than minimal changes to work routines and processes.

Plaintiff also asserts that the ALJ breached his duty to develop the record fully by failing to obtain additional opinions from treating and/or consulting sources, and thus inappropriately relied on his own interpretation of the medical evidence of record. However, "an ALJ does not have an affirmative duty to expand the record ad infinitum. Instead, he or she must only develop it when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision." *Walker v. Astrue*, 2012 U.S. Dist. LEXIS 138472 at *9 (W.D.N.Y.2012). Here, the 245 pages of medical records considered by the ALJ document a consistent and largely unremarkable course of mental health treatment which, along with plaintiff's self-reported daily activities and academic records, Global Assessment of Functioning ("GAF") scores, and assessments made during therapeutic appointments (generally noting appropriate interactions, intact thought processes, good compliance with treatment, and no physical problems) provided a sufficiently complete picture of plaintiff's functioning to permit the ALJ to determine her RFC. (Dkt. #8 at 394, 433, 439, 441, 443, 450, 461, 474).

Plaintiff also argues that the ALJ failed to properly consider the effect of her hip pain, back pain, psoriasis and ulcerative colitis on her RFC. None of these conditions was found to be a severe impairment by the ALJ, however, and plaintiff points to no evidence in the record that any of these conditions has a significant impact on her activities of daily living. As such, I do not find that the ALJ erred in declining to identify them as severe impairments.

I have considered the rest of the plaintiff's claims, and find them to be without merit.

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not based on legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #11) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #14) is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 2, 2019.